This is an appeal from a summary judgment in favor of the defendants, Gulf Life Insurance Company and Timothy Webb. We affirm.
On January 11, 1984, Gulf Life Insurance Company, through its agent Timothy Webb, sold an accident insurance policy to the plaintiff, William Coleman. On March 24 of the same year, Coleman had an accident and required emergency hospital care. As a result of the accident he incurred expenses of $100.00. On March 26, 1984, Coleman met with Webb in order to file his claim for reimbursement. Pursuant to Webb's instruction, Coleman acquired statements from two physicians regarding his emergency care. Webb testified that he did not file Coleman's claim initially because the policy was a new one and had not yet appeared on the company's register. On May 8, 1984, Webb contacted Robert Tillery, his district manager, for advice in handling the claim. On that day, Tillery filed the claim with the home office, noting that it was on a policy that had not appeared on the company's register. Tillery then received a letter from the home office asking for a copy of the application and policy, because no record of Coleman's policy existed at the home office. Webb contacted Coleman in order to get a copy of the application and policy from him. On May 24, 1984, Webb picked up the policy from Gwendolyn Denish, Coleman's common-law wife. On June 18, 1984, a copy of the application and policy was sent to the home office.
On July 2, 1984, Coleman's policy appeared on the computer register. On July 16, 1984, Coleman filed suit against the *Page 946 
defendants, claiming $2 million for compensatory and punitive damages for misrepresentation and bad faith failure to pay his claim. On November 5, 1984, Gulf Life paid Coleman $103.50 on his claim for covered charges plus interest.
 I.
Coleman argues that the defendants were guilty of misrepresenting policy coverage. However, the policy specifically provided for the exact benefits claimed by Coleman. The policy provided in pertinent part the following:
Emergency Accident Benefits
 Benefit (4). We will pay not less than $25.00 nor more than $100.00 for the expenses incurred if a Covered Person is injured:
1. while this policy is in force; and
 2. receives necessary medical treatment within 72 hours after the injury:
(a) from a physician; or
 (b) in an emergency room of a licensed hospital; and
 3. the treatment is a direct and sole result of the injury.
In order to make a prima facie case for fraud, the plaintiff must show a false statement of a material fact, the plaintiff's reliance on that fact, and damage as a proximate result. Leo v. Neil, 480 So.2d 572 (Ala. 1985);Roney v. Ray, 436 So.2d 875 (Ala. 1983). In this case, no false representation existed. The policy provided the exact benefits as represented by Webb and understood by Coleman. Therefore, the trial court properly granted defendants' summary judgment motion as to the misrepresentation count.
 II.
Coleman argues that he made a prima facie case of bad faith failure to pay his claim; therefore, he argues, the trial court improperly granted defendants' motion for summary judgment as to that claim. In order to prove bad faith refusal to pay, the plaintiff must show:
 (a) an insurance contract between the parties and a breach thereof by the defendant;
 (b) an intentional refusal to pay the insured's claim;
 (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
National Sec. Fire Cas. Co. v. Bowen,417 So.2d 179, 183 (Ala. 1982).
In the present case, Gulf Life paid the claim. When the claim was filed on July 16, 1984, Gulf Life had not determined to refuse to pay Coleman's claim. Coleman argues that Gulf Life, through its agent Webb, had communicated to him a refusal to pay on the part of Gulf Life. On May 24, 1984, Webb met with Denish, Coleman's common-law wife. Webb told Denish that the insurance company did not have a record of Coleman's policy. Based on the lack of a policy, Webb told Denish the claim was being denied. During this conversation Denish gave Webb the policy in order for Webb to verify to Gulf Life that Coleman did indeed have a policy. Coleman argues that this representation by Webb acted as a denial of his claim by Gulf Life. However, in essence, Webb communicated that Coleman's claim was not being processed because Gulf Life did not have a copy of his policy.
"Moreover, this Court has made it abundantly clear that an action for bad faith lies only where the insurer has acted with an intent to injure." Blue Cross Blue Shield v.Granger, 461 So.2d 1320, 1327 (Ala. 1984). In this case, Coleman has not shown any such intent on the part of Gulf Life. After the claim was filed, Tillery and Webb made efforts to facilitate the processing of Coleman's claim. While there was delay in the payment of the claim, Coleman filed suit prematurely. It was not until July 2, 1984, that his policy *Page 947 
appeared on the company's records; yet Coleman filed suit 14 days later, before receiving any communication from Gulf Life on his claim.
Coleman also argues that Gulf Life committed bad faith in the processing of his claim. Gulf Life paid his claim on November 5, 1984. He argues that this delay in payment of four months from the appearance of his policy on the company records, and eight months from the date he contacted Webb in order to file his claim, in and of itself shows bad faith on the part of Gulf Life. In Blue Cross, supra, the insured's claim was initially rejected because on the face of the claim it appeared that it could not be processed. It was over a year later before the claim was finally paid. In that case, computer error and other inefficiencies on the part of Blue Cross caused the valid claim to be mishandled. Even so, this Court concluded that, absent an intent on the part of Blue Cross not to investigate the claim, the tort action did not lie. Applying the reasoning in Blue Cross, we conclude that Coleman's suit must fail. We are not, however, deciding how much time must first pass in order to show that an insurance company has displayed bad faith in the investigation and processing of an insured's claim. Coleman has shown no wrongful intent, and the record does not support the finding of any such intent on the part of Gulf Life in the processing of Coleman's claim.
For the reasons set forth, the summary judgment in favor of the defendants is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and STEAGALL, JJ., concur.
BEATTY and HOUSTON, JJ., concur in the result.