This is an appeal from the trial court's refusal to grant the motion of Aetna Casualty and Surety Company ("Aetna") for JNOV or in the alternative for a new trial. The jury awarded Norma Jean Beggs, individually and as administratrix of the estate of James Monroe Beggs, Jr., (plaintiff) $100,000 for the tort of bad faith failure to pay her claim for uninsured motorist benefits.
The plaintiff's husband was killed in an accident with an uninsured motorist. At the time of the accident, the plaintiff had an automobile policy with Aetna that covered two vehicles, including the one in which her husband was riding at the time of the accident. By stacking uninsured motorist coverage, $20,000 was the maximum amount that could be recovered for personal injury or death of one person under that coverage. Aetna promptly paid benefits under the collision and medical payments coverages of the policy. Within two months of the accident, Aetna offered the plaintiff $10,000 as total payment for her uninsured motorist claim. The plaintiff demanded $20,000. Approximately two weeks later, Aetna increased its offer to $15,000. The plaintiff made a written demand for $20,000. Aetna responded to this with a written offer of $15,000. The plaintiff informed Aetna that her attorney would contact the Aetna claims representative. There is no evidence in the record that this occurred. Seven months after the accident, plaintiff sued Aetna and its claims representative, seeking damages for breach of contract, fraud and deceit, misrepresentation, and bad faith failure to pay plaintiff's claim for uninsured motorist benefits. Two months after suit was filed, Aetna paid $20,000 in uninsured motorist benefits. The claims representative's motion for directed verdict was granted. Aetna's motion for directed verdict on the plaintiff's contract claim and on the claims for fraud and deceit and misrepresentation were granted. Aetna's motion for a directed verdict on the plaintiff's bad faith claim was denied. After the jury verdict, Aetna filed a motion for JNOV, or in the alternative for a new trial, which alleged the grounds previously set out in Aetna's motion for directed verdict and, in addition, made exceptions to the court's oral charge and the refusal of the court to give certain of Aetna's requested charges. The court denied the motion and Aetna appeals. There was no cross-appeal by the plaintiff.
Justice Faulkner, in Quick v. State Farm Mutual InsuranceCo., 429 So.2d 1033, 1035 (Ala. 1983), writing for seven members of the Court (Chief Justice Torbert concurring specially, and Justice Jones concurring in the result), wrote:
 "This Court notes that the uninsured motorist provision of the policy sued upon in this case requires State Farm to pay '. . . all sums which the insured or his legal representative shall be legally entitled to recover as damages . . .' from an uninsured motorist. [Emphasis supplied in Quick.]
 "The term 'legally entitled to recover as damages' has been interpreted to mean:
 " '. . . that the insured must be able to establish fault on the part of the uninsured motorist, which gives rise to damages, and must be able to prove the extent of those damages. In a *Page 1352 
direct action by the insured against the insurer, the insured has the burden of proving in this regard that the other motorist was uninsured, legally liable for damage to the insured, and the amount of this liability.' [Emphasis added in Quick.]
 State Farm Mutual Automobile Insurance Company, Inc. v. Griffin, 51 Ala. App. 426, 286 So.2d 302 (1973).
 "Thus, there can be no breach of an uninsured motorist contract, and therefore no bad faith, until the insured proves that he is legally entitled to recover. We opine that the trial court correctly ruled in favor of defendant State Farm on the bad faith claim, as the evidence proves that the amount of the damages had not been determined." (Emphasis supplied.)
Chief Justice Torbert concurred specially in theQuick judgment, stating that "there was a debatable issue as to the amount due under the uninsured motorist coverage." (Emphasis added.) He added, "There being a legitimate dispute as to the amount due, summary judgment against the bad faith claim was proper." 429 So.2d at 1035-36.
In Quick, the Court affirmed State Farm'ssummary judgment in a case in which Quick had sought to recover for State Farm's alleged bad faith in failing to pay uninsured motorist benefits.
In the case at issue, we are not involved with alleged trial court error in granting or refusing to grant a summary judgment in a case involving the tort of bad faith in refusing to pay a claim for uninsured motorist benefits, but with alleged error in the denial of a directed verdict in such a case. Our standard of review is the same.
A summary judgment "functions as a gatekeeper to avert needless trials," J. Hoffman W. Schroeder, "Burdens of Proof," 38 Ala.L.Rev. 31, 37 (1986), and it is in effect nothing more or less than an accelerated directed verdict in a pretrial context. "Subject to the provisions of Rule 56(f) and Rule 56(e) [Ala.R.Civ.P.], sentence 4, clause 1, a court may enter summary judgment for a defendant whenever the same state of the proofs would justify a directed verdict for him at trial." J. Hoffman W. Schroeder, "Burdens of Proof," at 37. (Emphasis in original.)
The plaintiff was appointed administratrix of her husband's estate on November 28, 1984. At that time, she had the capacity to act as an agent of legislative appointment for enforcing the public policy evidenced by § 6-5-410, Code of Alabama 1975 (Geohagan v. General Motors Corp., 291 Ala. 167,279 So.2d 436 (1973); that public policy has been stated as preventing homicides by such "pecuniary mulct as the jury 'deem just,' " Savannah M.R.R. v. Shearer, 58 Ala. 672
(1877), and that phrasing has subsequently been changed to such pecuniary mulct "as the jury may access." Richmond D.R.R.v. Freeman, 97 Ala. 289, 11 So. 800 (1892). The amount rests within the discretion of the jury, whose verdict is not subject to review by the trial court for inadequacy.Louisville N.R.R. v. Street, 164 Ala. 155,51 So. 306 (1909). There is nothing in the record to show that the plaintiff supplied Aetna with any evidence of the amount of "pecuniary mulct"[1] that would have been assessed against the uninsured tort-feasor if a homicide case had been presented to a jury. With only punitive damages recoverable in wrongful death cases and with no standards for determining excessiveness or inadequacy (if such damages can be inadequate in wrongful death cases, Louisville N.R.R. v. Street, supra) except what trial or appellate courts consider to be awards of amounts that indicate prejudice or passion, Trahan v.Cook, 288 Ala. 704, 265 So.2d 125 (1972); it is doubtful that an insured could ever prove the amount of an insurer's liability under uninsured motorist coverage in a wrongful death case with the specificity necessary to recover against an insurer *Page 1353 
for bad faith in failing to negotiate or pay a wrongful death claim under uninsured motorist coverage.
This would not be the first time that this Court's peculiar interpretation of the damages aspect of our wrongful death statute has potentially deprived a claimant of a right it might have had if personal injury, and not death, had resulted. SeeCarter v. City of Birmingham, 444 So.2d 373 (Ala. 1983), cert denied, 467 U.S. 1211, 104 S.Ct. 2401,81 L.Ed.2d 357 (1984).
In the present case there was no offer of proof by the appellee-wife of the amount of Aetna's liability under the uninsured motorist provision until the trial of the case, which was over 19 months after Aetna had paid $20,000 — the maximum of its potential liability — in uninsured motorist benefits. At trial, appellee-wife presented testimony of eminently qualified attorneys who testified, first in an offer of proof, and later before the jury, that the recovery in a wrongful death case against the uninsured tort-feasor would have been more than $20,000. Therefore, at the time Aetna made full payment there was a legitimate question as to the amount due; the trial court erred in not granting Aetna's motion for a directed verdict, and later in not granting Aetna's motion for JNOV. Quick v. State Farm, supra; see Bowersv. State Farm Mutual Automobile Insurance Co.,460 So.2d 1288 (Ala. 1984).
The judgment is reversed and the case remanded for action consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, BEATTY and STEAGALL, JJ., concur.
[1] Black's Law Dictionary (5th ed. 1979), defines "mulct": "[A] penalty or punishment imposed on a person guilty of some offense, tort, or misdemeanor, usually a pecuniary fine or condemnation in damages. A forfeit, fine, or penalty. To sentence to a pecuniary penalty or forfeiture as a punishment; fine; hence to fine unjustly; to punish."