[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10243

Non-Argument Calendar

_____

DANIEL VOSS,
an individual,

Plaintiff-Appellant,

*versus*

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY,

Defendant-Appellee.

—————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 1:17-cv-01465-SGC

—————————————

Before WILSON, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Donna Smith, an underinsured motorist, hit Daniel Voss while he was riding his bicycle. Voss turned to State Farm Insurance, his underinsured-motorist insurance carrier. State Farm refused to pay Voss until he won a judgment against Smith—thereby proving her liability. After the trial, Voss was awarded $1.9 million in damages. He then sued State Farm for breach of contract, bad faith, and outrage. A magistrate judge granted State Farm summary judgment on each claim.[1] Now, Voss appeals that order. For the reasons that follow, we affirm.

## I

Donna Smith struck Daniel Voss with her car while he was bicycling, severely injuring him.[2] Nationwide Mutual Insurance

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), the parties consented to have their case adjudicated by a magistrate judge.

[2] Voss was taken to the University of Alabama at Birmingham hospital where he underwent four brain surgeries. Despite those surgeries, some of Voss's injuries—including impaired cognitive function—will never fully heal.

Company, Smith's auto insurer, offered Voss its policy limits to settle the claim against Smith.  Unfortunately for Voss, Smith carried only $25,000 in liability insurance—far less than his medical expenses.  *See Smith v. Nationwide Mut. Ins. Co.*, 799 F. App'x 768, 770 (11th Cir. 2020) (per curiam).  Fortunately for Voss, at the time of the collision, he was covered by several State Farm policies that included $100,000 of underinsured motorist coverage—still less than his medical expenses.  Voss informed State Farm that Smith's insurance wouldn't cover his medical costs and requested an underinsured-motorist payment.

As its name implies, underinsured-motorist coverage pays an insured for his losses caused by a driver that doesn't have sufficient liability insurance to cover the insured's damages.  Here it worked essentially like this:  Once Voss realized that Nationwide's policy-limits settlement offer wouldn't cover the cost of his injuries, he approached his insurer, State Farm.  After receiving notice that the settlement offer was insufficient to cover Voss's costs, State Farm began investigating Voss's claim against Smith.  At that point the insurance policy gave State Farm two options: (a) consent to the settlement with Smith/Nationwide or (b) refuse the settlement.  If State Farm consented to the settlement, Nationwide would have paid Voss its $25,000 policy limits—thereby releasing Smith from any liability—and Voss would then have commenced a new, contract-based claim against State Farm for the costs of his injuries (or, more likely, would have settled with State Farm for its policy limits).  If State Farm rejected the settlement, it was required

to advance, or "front," Voss the amount of the settlement, and leave Voss to pursue a claim against Smith. *See id.*

After investigating Voss's claim, State Farm was uncertain about Smith's liability.[3]  Accordingly, it chose option (b) and rejected Nationwide's policy-limits settlement so that Voss would have to prove Smith was, in fact, liable.  State Farm "fronted" Voss the money that Voss would have received from the Smith/Nationwide settlement, leaving Voss to continue with a suit against Smith.  Eventually, a jury found Smith liable to Voss for $1.9 million.  After the suit, State Farm paid Voss the other $75,000 of his underinsured-motorist insurance coverage, and Nationwide paid it's $25,000 policy limit.  That left Voss with an excess judgment of $1.775 million against Smith.

So, Voss sued State Farm.  He contended that State Farm breached its insurance policy in two ways: (1) by failing to conduct a good-faith investigation into the question of who was liable for the collision; and (2) by refusing to consent to his settlement with Smith/Nationwide, thereby forcing him to litigate against Smith before paying him.  He also contended that State Farm acted in bad faith and committed the tort of outrage.

---

[3] This is relevant because under Alabama law, for an insured to receive underinsured motorist benefits, the insured must be legally entitled to recover from the driver of the underinsured vehicle. *See Ex parte Carlton*, 867 So. 2d 332, 334 (Ala. 2003).  Here, State Farm contends that there was evidence that Smith wasn't liable for the collision and, thus, that it believed Voss may not have been entitled to payment.

State Farm moved for summary judgment, which a magistrate judge granted. With respect to the breach-of-contract claim, the magistrate judge held that, under Alabama law, State Farm had to pay Voss only after he demonstrated he was entitled to recovery from Smith, and Voss demonstrated liability only after his trial against Smith, at which point State Farm paid him. It also held that forcing Voss to litigate to establish Smith's liability was permissible under Alabama Law. Thus, the court held, State Farm did not breach its contract. The court also held that Voss's failure to show a breach of contract was fatal to his bad-faith claim because breach of an insurance contract is an element of that claim. Lastly, it held that State Farm's conduct was not egregious enough to support Voss's outrage claim. Voss now appeals the magistrate judge's order.[4]

---

[4] "We review a district court's"—or in this case, the magistrate judge's—"grant of summary judgment de novo." *McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1058 n.2 (11th Cir. 2022). "Summary judgment is proper if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "And a genuine dispute exists if a jury applying the applicable evidentiary standard could reasonably find for either the plaintiff or the defendant as to the material fact." *Brady v. Carnival Corp.*, 33 F.4th 1278, 1281 (11th Cir. 2022) (cleaned up). "[W]e view all evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor." *Affordable Bio Feedstock, Inc. v. United States*, __ F. 4th __, No. 21-11850, 2022 WL 2920058, at *2 (11th Cir. July 26, 2022) (quotation omitted).

## II

For the reasons explained below, we hold that the magistrate judge correctly granted State Farm summary judgment on each of Voss's claims.

## A

We start with breach of contract. Voss contends that State Farm breached its insurance contract by failing to conduct a good-faith investigation and by requiring him to sue Smith to recover before paying him.

State Farm's policy permitted it to "preserve [its] right of subrogation against the . . . driver of the uninsured motor vehicle" by paying Voss "an amount equal to" Nationwide's settlement offer. Doc. 73-22 at 8 (emphasis omitted). State Farm paid Voss $25,000 to protect its subrogation right.

But Voss argues that State Farm shouldn't have made him pursue litigation against Smith. Under Alabama Supreme Court precedent, an uninsured-motorist insurance carrier must conduct a "good faith investigation" or otherwise "waive any right to subrogation against the tort-feasor." *Lambert v. State Farm Mut. Auto. Ins. Co.*, 576 So. 2d 160, 167 (Ala. 1991). Voss seemingly contends (1) that State Farm did not conduct a "good faith investigation" and thereby waived its right to subrogation and, accordingly, (2) that it then breached the contract by requiring him to litigate against Smith before being willing to pay him. Problematically for Voss, Alabama considers a bad-faith failure to investigate a tort claim, not a breach-of-contract claim. *See State Farm Fire & Cas.*

*Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013). And State Farm did not breach any promise that it made in the insurance contract.

Moreover, Voss cannot prevail on a breach-of-contract claim by arguing that State Farm should have paid him sooner. The Alabama Supreme Court has held that an insurance company can't be held liable for breach before the insured shows he is "legally entitled to recover" payment from the underinsured motorist. *Quick v. State Farm Mut. Auto. Ins. Co.*, 429 So. 2d 1033, 1035 (Ala. 1983) (holding that State Farm wasn't liable for failure to pay on an uninsured motorist policy because the plaintiffs had not yet demonstrated the uninsured driver's liability); *see also Broadway v. State Farm Mut. Auto. Ins. Co.*, 364 F. Supp. 3d 1329, 1332, 1335–36 (M.D. Ala. 2019) (explaining that, to recover from an insurance company, an insured must (1) prove that he is entitled to recovery against the tortfeasor and (2) show his damages). In other words, "[t]here can be no breach of an uninsured motorist contract . . . until the insured proves that he is legally entitled to recover." *Quick*, 429 So. 2d at 1035.

Voss did not prove that he was legally entitled to recover from Smith until after trial—at which point State Farm paid him.[5]

––––––––––

[5] Trial is not the only method an insured has of showing that he is legally entitled to recover. An insured can also present the insurance company with "substantial evidence" that the uninsured driver was liable. *Ex Parte Safeway Ins. Co. of Ala., Inc.*, 148 So. 3d 39, 43 (2013) (quotation omitted); *Broadway*, 364 F. Supp. 3d at 1338–39 (M.D. Ala. 2019). But here, Voss did not do so. Although Voss alleged to State Farm that Smith was negligent, he didn't present State Farm with substantial evidence showing that to be the case.

8                        Opinion of the Court                        22-10243

Accordingly, State Farm did not breach its insurance contract by refusing to pay Voss until after he was awarded damages from Smith. Because Voss cannot prevail on a breach of contract claim, the magistrate judge correctly granted summary judgment.

## B

Next, Voss's bad-faith claim. The Alabama Supreme Court has held that "[r]egardless of whether the claim is a bad-faith refusal to pay or *a bad-faith refusal to investigate*, the tort of bad faith requires proof of the . . . absence of legitimate reason for denial." *Brechbill*, 144 So. 3d at 258 (emphasis added). Here, even if a jury could find that State Farm's investigation was sloppy,[6] it couldn't find that State Farm had no "legitimate reason" for its decision requiring Voss to litigate. The accident report, State Farm's photographs of the scene, and State Farm's investigator's conclusions all reasonably led it to believe that Voss might have been contributorily negligent—and therefore not "entitled to recover." And State Farm was within its rights to "insist that a jury determine liability and damages." *Ex parte Allstate Prop. & Cas. Ins. Co.*, 300 So. 3d 1124, 1126 (Ala. 2020). Because the facts, even viewed in favor of Voss, cannot demonstrate that State Farm lacked a legitimate

---

[6] And, to be sure, it was. State Farm did not speak to any of several available witness who might have been able to explain what led to the collision. Nor did it consult photographs of the scene taken by Nationwide just seven days after the collision. Instead, State Farm relied primarily on a police report—the information in which was derived solely from Smith (who had an obvious interest in avoiding liability)—as well as photographs taken four months after the collision.

reason to insist on subrogation, Voss cannot succeed on his tortious bad-faith claim and the court correctly granted summary judgment.

## C

Finally, "for a plaintiff to recover under [the tort of outrage], he must demonstrate that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990). For essentially the same reasons that we conclude that State Farm didn't act in bad faith, we hold that a reasonable jury could not find that State Farm's conduct was "extreme and outrageous." Thus, Voss could not prevail on his outrage claim, and the magistrate judge correctly granted summary judgment for State Farm.

★ ★ ★

In sum, the magistrate judge appropriately granted summary judgment.[7]

---

[7] Voss separately argues that the magistrate judge erred by "refusing to consider any evidence presented by Voss' expert in ruling on summary judgment without making any affirmative ruling on State Farm's motion to exclude." Br. of Appellant at 20. The magistrate judge didn't "de facto" exclude Voss's evidence. Rather, as we read her opinion, the magistrate judge simply found that Voss's proposed evidence didn't change the result and, accordingly, ruled that the evidentiary motion was moot. Doc. 91 at 12, 29. Nowhere in her

AFFIRMED.

---

opinion does the magistrate judge indicate that she refused to consider the presented evidence.